# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**GEORGE A. CRUZ, JR.,**　　　　　　　　　Case No. 4:19 CV 2508

　　Plaintiff,　　　　　　　　　　　　　　Judge Christopher A. Boyko

　　v.　　　　　　　　　　　　　　　　　Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

　　Defendant.　　　　　　　　　　　**REPORT AND RECOMMENDATION**

## INTRODUCTION

Plaintiff George A. Cruz, Jr. ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated October 28, 2019). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in October 2016, alleging a disability onset date of October 14, 2015. (Tr. 191-97). His claims were denied initially and upon reconsideration. (Tr. 134-40). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 141-42). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on August 3, 2018. (Tr. 49-88). On September 14, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 13-21). The Appeals Council denied Plaintiff's request for review, making

the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on October 27, 2019. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Born in 1970, Plaintiff was 45 years old on his alleged onset date. *See* Tr. 191. Plaintiff drove himself to the ALJ hearing; it took him 47 minutes and the length of the drive "bother[ed] [his] shoulder." (Tr. 57).

Plaintiff did not believe he could work because he had pain in his knees and upper body. (Tr. 67). Specifically, he testified he had arthritis in both knees, for which he wore braces; the braces helped him with the pain "a little bit". (Tr. 68). Plaintiff further had lower back problems, aggravated by two car accidents. (Tr. 70-71). He could not stand for a long time because his knees would swell, and could not sit for a long time because he got stiff. (Tr. 69). At home, Plaintiff would get up from a seated position every fifteen to twenty minutes to stretch. *Id.* He could stand for a similar period of time. *Id.* He testified he could not walk far and could not lift anything over twenty pounds. (Tr. 69-70). Plaintiff took over-the-counter anti-inflammatory medication to help with his knee and back pain. (Tr. 71). He had also tried physical therapy and chiropractic treatment, without improvement (Tr. 71-72).

Plaintiff also had problems with both shoulders. (Tr. 72). Plaintiff is left-handed (Tr. 76) and his left shoulder is worse than the right (Tr. 73). The pain in his shoulders made it difficult for him to move around; sleeping on his side also caused pain. (Tr. 72). Plaintiff underwent two surgeries for his left shoulder, which provided "[a] tiny bit" of improvement. (Tr. 72-73). He also had injections in his left shoulder without improvement. (Tr. 71-72, 76). Plaintiff had pain and difficulty reaching overhead; he could "[s]ometimes" reach his arms to chest level. (Tr. 74-75).

Plaintiff also described pain in both shoulders with reaching in front, again more on the left than the right. (Tr. 75).

Plaintiff also had problems with his neck that caused pain when turning his head or looking up and down. (Tr. 76-77). He further had carpal tunnel syndrome in his left hand, but had not undergone any treatment. (Tr. 77-78).

When asked if he could perform household chores such as cleaning, laundry, dishes, and cooking, Plaintiff testified that he could not, but stated he "tr[ies] to help [his] wife as best [he] can"; his wife would see him in pain and take over tasks he started. (Tr. 78). He grocery-shopped with his thirteen year old son who would help him reach for things. (Tr. 79-80). He did not engage in outside social activities, but watched movies with his children. *Id.*

Relevant Medical Evidence

Plaintiff saw James Morgenstern, D.C., in November 2015 reporting pain and burning in his neck, upper back, and shoulders originating from a motor vehicle accident the prior month. (Tr. 281). He also had numbness in his fingertips and chronic headaches. *Id.* Dr. Morgenstern observed Plaintiff had reduced cervical range of motion in all directions and limited and painful left shoulder range of motion. *Id.* He further observed some reduced strength, muscle spasms, and tenderness to palpation. (Tr. 282). Dr. Morgenstern recommended care three times per week for four weeks, consisting of spinal manipulation, extraspinal manipulation, electrical muscle stimulation, and ultrasound therapy, as well as a therapeutic exercise program. (Tr. 283).

In January 2016, Plaintiff saw neurosurgeon Chander Kohli, M.D. (Tr. 289). He reported neck, upper back, and shoulder pain, resulting in left hand numbness and tingling, as well as lost strength. (Tr. 289). Dr. Kohli observed Plaintiff had a normal gait and station, and performed tandem gait without difficulty. *Id.* He had limited movement in his cervical spine, and tenderness

3

in the cervical and interscapular areas. (Tr. 290). His upper extremity strength was normal except 3/5 strength in his biceps, triceps, and shoulder abduction, and 4/5 left hand grip. *Id.* His sensation was diminished to 70 percent in the left upper extremity. *Id.* Dr. Kohli observed that Plaintiff's MRI revealed multiple level minor bulges, worst at C3-C4 in the center. *Id.* He diagnosed bulging of the cervical intervertebral disc without myelopathy, and a neck whiplash injury; he ordered an upper extremity EMG and cervical flexion and extension x-rays. *Id.*

An April 2016 left arm nerve conduction study/electromyography was abnormal "with indication of left median neuropathy at or about the wrist as seen in carpal tunnel syndrome." (Tr. 443).

In August 2016, Plaintiff reported ongoing left shoulder pain to a provider at Youngstown Orthopaedic Associates. (Tr. 451). He reported moderate difficulty with his activities of daily living, and little improvement with chiropractic care and NSAIDs. *Id.* On examination, the provider noted palpable discomfort in the area of the acromial and AC joint and some reduced range of motion and strength. (Tr. 452). The provider diagnosed chronic left shoulder pain and noted the examination was "consistent with impingement syndrome along with likely focal full-thickness rotator cuff disruption"; left shoulder arthroscopy with subacromial arch decompression and rotator cuff repair was recommended. (Tr. 453).

In December 2016, Plaintiff underwent a consultative evaluation with Prabhudas Lakhani, M.D. (Tr. 425-32). Plaintiff told Dr. Lakhani he had low back pain for ten years, which was constant and worse when sitting more than 30 to 60 minutes, walking 30 feet, or standing more than 20 minutes; he said he could only carry a gallon of milk and the pain worsened in cold and rainy weather. (Tr. 426). Plaintiff also reported pain in both shoulders, and that "he functions barely with his left hand." *Id.* He stated he was able to eat, do dishes, cook, pick up a cup, button

4

and zip, however, occasionally he could not shave or open a door, and he could not go down stairs to do laundry. *Id.* On examination, Dr. Lakhani noted Plaintiff had a normal gait with braces, and a "broad based and very slow" gait without braces. *Id.* Range of motion in Plaintiff's shoulders was "considerably restricted, due to pain which almost made him cry." (Tr. 427). Dr. Lakhani also observed weakness in left shoulder movement and hip flexors, along with somewhat restricted knee movements and lumbar flexion. *Id.* Dr. Lakhani's diagnostic impression was that Plaintiff "most likely has degenerative joint disease of the knees, low back pain, left shoulder pain." (Tr. 427). Dr. Lakhani signed manual muscle testing results showing 4 to 4+/5 strength in Plaintiff's shoulders, elbows, fingers, hips, knees, feet, and toes. (Tr. 429). Plaintiff's grasping ability was abnormal (4/5 on the left and 4+/5 on the left), but his manipulation, pinch, and fine coordination was normal bilaterally. *Id.* Plaintiff had reduced shoulder range of motion, with "considerable pain" in both shoulders with flexion and pain with abduction . (Tr. 430). Plaintiff had normal range of motion in his cervical spine, elbows, hands, wrists, and fingers. (Tr. 430-31). He had some reduced range of motion in hip and knee flexion and in his dorsolumbar spine. (Tr. 431-32). He had no muscle atrophy. (Tr. 430).

In February 2017, Plaintiff underwent a left shoulder arthroscopy with Joseph Stefko, M.D. (Tr. 474-75). In July 2017, Plaintiff followed-up with Dr. Stefko at Youngstown Orthopaedic Associates for "[p]ersistent activity related anterior shoulder pain." (Tr. 476). In his review of systems notes, Dr. Stefko noted Plaintiff had no joint pain, numbness or tingling in his hands, or morning stiffness. *Id.* Plaintiff had palpable discomfort in the area of the biceps groove, "[n]o significant change from previous exam" in shoulder range of motion, but full rotator cuff strength on abduction and external and internal rotation. (Tr. 477). Dr. Stefko diagnosed biceps tendinopathy and recommended a biceps tendon injection. *Id.*

In May 2018, Plaintiff was noted to have the ability to perform METS (metabolic testing equivalent) equivalent to walking a block or two on level ground, and do "moderate work around the house such as vacuuming, sweeping floors, or carrying in groceries." (Tr. 600).

*Opinion Evidence*

After his December 2016 examination, Dr. Lakhani's medical source statement stated: "Based on objective findings, this man is alert and oriented, concentration, hearing and speech is normal. Due to all of these factors and his limitations on sitting, standing and walking, he may not be a good candidate for any meaningful kind of work." (Tr. 427).

State agency physician Abraham Mikalov, M.D., reviewed Plaintiff's records in December 2016 and stated Plaintiff had severe impairments of dysfunction of major joints and degenerative disc disease. (Tr. 98). He opined Plaintiff could occasionally lift or carry 20 pounds, and frequently lift or carry 10. (Tr. 99). He could stand or walk for four hours in an eight-hour workday, and sit for about six hours. (Tr. 99-100). Dr. Mikalov opined Plaintiff could frequently push and pull with his upper extremities, and occasionally use foot controls. (Tr. 100). He further opined Plaintiff had postural restrictions, could not reach overhead, and could only frequently reach laterally with his bilateral upper extremities. (Tr. 100-01). Finally, he opined Plaintiff should avoid all exposure to hazards. *Id.* Dr. Mikalov stated he gave no weight to Dr. Lakhani's opinion because "Dr. Lakhani provided an opinion which was an issue reserved for the [C]ommissioner" (Tr. 99); he summarized Dr. Lakhani's physical examination findings in his explanation of the RFC (Tr. 101).

State agency physician Lynne Torello, M.D., reviewed Plaintiff's records and provided an identical opinion in April 2017. (Tr. 112-15).

6

VE Testimony

A VE appeared and testified at the administrative hearing. (Tr. 80-87). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 82-84. The VE responded such an individual could perform jobs such as addresser, document preparer, and order clerk. (Tr. 83-84).

ALJ Decision

In his September 2018 decision, the ALJ found Plaintiff met the insured status requirements for DIB through September 30, 2021 and had engaged in brief periods of substantial gainful activity since his alleged onset date (October 14, 2015). (Tr. 15).[1] The ALJ found Plaintiff had severe impairments of: bilateral knee osteoarthritis, right-sided sciatica, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, carpal tunnel syndrome of the left upper extremity, tendinitis, arthropathy of the right shoulder, and rotator cuff tear of the left shoulder. *Id.* The ALJ concluded, however, that none of these impairments – singly or in combination – met or medically equaled the severity of a listed impairment. (Tr. 16). Thereafter, the ALJ set forth Plaintiff's RFC:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours during an 8-hour workday, sit for 6 hours during an 8-hour workday; requires the option to sit/stand every 30 minutes, but is off task no more than 1-2 minutes during the transition between postures; occasionally use foot controls bilaterally; frequently use hand controls bilaterally; frequently handle/finger with the left upper extremity; frequently reach forward bilaterally, but never reach overhead bilaterally; occasionally climb ramps/stairs, but never climb ladders/ropes/scaffolds;

---

1. The ALJ explained that "even though the claimant has worked after the alleged disability onset date, and some of this work has resulted in earnings at the substantial gainful activity level, he has not had earnings at the substantial gainful activity level for the entire, or even most, of the period under consideration." (Tr. 15).

7

>frequently balance, occasionally stoop, kneel, and crouch, never crawl; and have no exposure to unprotected heights or moving mechanical parts.

*Id.* The ALJ then concluded Plaintiff could not perform any past relevant work, but considering his age, education, work experience, and RFC, could perform jobs that exist in significant numbers in the national economy. (Tr. 19). Therefore, the ALJ found Plaintiff not disabled. (Tr. 20).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single objection to the ALJ's decision. He argues the ALJ erred in discounting Dr. Lakhani's opinion. For the reasons discussed below, the undersigned recommends the Commissioner's decision be affirmed.

In formulating an RFC, an ALJ must consider, *inter alia*, medical opinion evidence. *See* 20 C.F.R. § 1527(d). But, an ALJ is not required to provide the same "good reasons" for

9

discounting a one-time examining physician as he is for a treating physician. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating* sources") (emphasis in original); *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011) (because opinions were from non-treating sources, the ALJ was not "under any special obligation to defer to [their] opinion[s] or to explain why he elected not to defer to [them]."). The ALJ is, however, to weigh the opinion of examining physicians under the same factors as for treating physician opinions, including the supportability and consistency of those opinions. *See* 20 C.F.R. § 404.1527(d). Further, it is the ALJ, not a particular physician, who is responsible for formulating a claimant's RFC. *See* 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009); 20 C.F.R. §§ 404.1546(c). An ALJ is not required to accept any particular physician's opinion in its entirety in formulating an RFC, *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009), and "[t]he ALJ has discretion to determine whether additional evidence is necessary", *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). Thus, the question is whether the ALJ's evaluation of Dr. Lakhani's opinion is supported by substantial evidence. As discussed below, the undersigned concludes that it is.

The ALJ addressed Dr. Lakhani's opinion as follows:

> I assign little weight to the medical consultant's opinion (Prabhudas R. Lakhani, M.D., 12/15/2016, Exhibit 9F). He observed, interacted with, and physically examined the claimant before providing his opinion. However, he opined that "he may not be a good candidate for any meaningful kind of work." This is an issue reserved for the Commissioner. Also, he indicated that he eliminated all work due to the claimant's limitations on sitting, standing, and walking, which implies that he based his opinion partly on the claimant's statements to him and partly on the claimant's performance at the examination, which are both under the claimant's control. Additionally, the record shows that the claimant has admitted that he completes most of his activities of daily living, which include performing self-care tasks, cooking, and cleaning, as well as driving, going to the store with his son, watching DVDs with his children, and watching movies, which further undermines his opinion.

10

(Tr. 18).

The ALJ thus provided three reasons for discounting Dr. Lakhani's opinion. First, he explained that Dr. Lakhani's opinion statement – that Plaintiff was incapable of any work – was on an issue reserved to the Commissioner. This is correct under the regulations. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); 20 C.F.R. § 404.1527(d)(2) ("Opinions on some issues . . . are not medical opinions, as described in paragraph (a)(1) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Plaintiff acknowledges as much, but contends that the ALJ "should not have merely disregarded Dr. Lakhani's findings" but should rather, have re-contacted Dr. Lakhani to provide further explanation, citing 20 C.F.R. § 404.1519p(b). (Doc. 11, at 7). The cited regulation provides that if a consultative examiner's report "is inadequate or incomplete" the ALJ "will contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). The Sixth Circuit recently addressed this provision in *Dooley v. Commissioner of Social Security* as follows:

> Dooley also contends that to the extent the ALJ was unclear about the basis for Dr. Yates's opinion, the ALJ should have contacted Dr. Yates for clarification instead of according her opinion limited weight. This argument fails because, under the regulations, the agency will recontact a consultative examiner for clarification when the examiner's report is "inadequate or incomplete." 20 C.F.R. § 404.1519p(b). Dr. Yates's report, although inconsistent with the clinical signs and symptoms that Dooley exhibited during his physical examination, was not inadequate or incomplete. The agency in reviewing a consultative examiner's report considers

11

> whether it provides "evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses." 20 C.F.R. § 404.1519p(a)(1). As explained above, the information that Dr. Yates's report included about the "generally benign" results of Dooley's physical examination provided the ALJ with an adequate basis to give limited weight to Dr. Yates's assessment of Dooley's physical functioning. Further, although Dr. Yates failed to clarify her limitation against "excessive" bending, kneeling, or squatting, this failure does not render her report incomplete. This is because a consultative examiner's report is not rendered incomplete by the absence of a statement about what a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1519n(c)(6); 416.919n(c)(6). Because Dr. Yates's report was not inadequate or incomplete, the ALJ did not have to contact Dr. Yates for clarification.

656 F. App'x 113, 122 (6th Cir. 2016); *see also Houston v. Colvin*, 180 F. Supp. 3d 877, 889 (D.N.M. 2016) (citing the Tenth Circuit's analysis of "a similar provision applicable to treating physicians, [where] the Tenth Circuit noted, 'it is not the rejection of the treating physicians' opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty.'") (quoting *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (internal quotations omitted)).

The same rationale applies here – the ALJ discounted Dr. Lakhani's opinion because it offered an opinion on a basis reserved to the Commissioner, and then proceeded (as discussed further below) to explain how that opinion was: 1) seemingly based on Plaintiff's subjective symptoms, and 2) inconsistent with other evidence of record. That is, Dr. Lakhani's opinion was not "inadequate or incomplete" as contemplated by the regulation, but was deficient – and therefore discounted – for other reasons. *See Dooley*, 656 F. App'x at 122. Other courts have found in similar situations that there is no duty to recontact, citing in part the fact that the consultative examiner fulfilled his or her duties. *See, e.g.*, *McDowell v. Astrue*, 2010 WL 2651308, at *4 (E.D. Ky.) ("In the present case, the records from Dr. Bansal were not incomplete or inadequate to make a decision . . . There is no suggestion that there are any records or examination results available to Dr. Bansal which are not included in the court transcript. Therefore, the court finds that the record

before the ALJ was not incomplete or inadequate."); *Shupe v. Astrue*, 2009 WL 3062009, at *6-7 (E.D. Ky.) ("[T]he report does not contain a conflict or ambiguity just because it contained limitations that were not supported by the very vague and limited findings in the physician's office notes . . . . There is no evidence that Dr. Tochev had any additional information that was not included in his office notes. Accordingly, the court finds that the record before the ALJ was not inadequate or incomplete.")

*Dooley* also forecloses Plaintiff's argument that "from a policy standpoint, it makes little sense to allow the ALJ to simply cast-aside the report from Dr. Lakhani" because it would be a waste of resources "if the ALJ is simply allowed to dismiss a consultative examiner's opinion because it was inadequate, incomplete, or did not provide the proper information regarding the claimant's condition." (Doc. 11, at 9). To a similar argument, the Sixth Circuit responded:

> Dooley further argues that even if the ALJ was not required to contact Dr. Yates for clarification, the ALJ's decision not to seek further information from Dr. Yates was an abuse of discretion. To support this contention, Dooley argues that because his limited finances prevented him from receiving the specialized treatment that he needed to support his claim, "Dr. Yates's examination had a heightened importance in this case." Dooley contends that therefore "if Dr. Yates did an inadequate job, the fairest course of action would have been for the ALJ to seek clarification rather than penalizing Dooley for the doctor's failure to offer a more detailed analysis." It is true that an ALJ may contact a medical source for further clarification when the record contains insufficient evidence for the ALJ to make a determination as to whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1). However, the ALJ's thorough opinion demonstrates that he carefully considered the entire record, including Dr. Yates's opinion, Dooley's treatment notes from the Church Health Center and the Saint Francis Hospital, opinions from two state agency reviewing physicians, and Dooley's testimony at his hearing, before determining that there was sufficient evidence in the record to conclude that Dooley was not disabled. The ALJ's decision not to contact Dr. Yates for clarification was therefore not an abuse of discretion.

656 F. App'x at 122–23. Similarly here, the ALJ reviewed all the relevant medical evidence, including Plaintiff's treatment record, opinions from two state agency reviewing physicians (who,

13

as discussed below, had the results of Dr. Lakhani's examination), and Plaintiff's own testimony and reports to medical providers. *See* Tr. 17-18.

Second, the ALJ stated he discounted Dr. Lakhani's opinion in part because the opinion "implies that he based his opinion partly on the claimant's statements to him and partly on the claimant's performance at the examination, which are both under the claimant's control. " (Tr. 18). Plaintiff argues this reasoning is flawed because the ALJ never determined Plaintiff was not credible. Preliminarily, the undersigned notes the ALJ did in fact make a determination that Plaintiff's subjective complaints were not entirely consistent with the record. *See* Tr. 18 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). Plaintiff has not challenged this finding. Moreover, the undersigned agrees with the Commissioner that the ALJ sufficiently explained he discounted Dr. Lakhani's opinion because it appeared based (at least in part) upon Plaintiff's subjective complaints rather than his own objective findings. This is a reasonable reading of the opinion. Although Dr. Lakhani noted on manual muscle testing that Plaintiff had "considerably restricted" range of motion in the shoulders, weak hip flexors, and restricted knee movement and lumbar flexion, he failed to explain how these objective findings led him to conclude Plaintiff could not work. *See* Tr. 427. Further, Dr. Lakhani cited only Plaintiff's "limitations on sitting, standing and walking" as support for his conclusion. *See id.* However, the only explicit discussion of these "limitations" in the report is Dr. Lakhani's summary of Plaintiff's subjective reports of his abilities to sit, walk, or stand. *See* Tr. 426 ("The pain is constant and worse when sitting more than 30-60

minutes or walking 30 feet or standing more than 20 minutes.").[2] Thus, the undersigned finds the ALJ's reading of the opinion – as seemingly based on Plaintiff's subjective symptom reports – to be a supported reading. The Sixth Circuit has repeatedly upheld decisions to discount opinions that appear based on subjective complaints without sufficient support from objective medical data. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012); *Poe*, 342 F. App'x at 156.

Third, the ALJ explained that Dr. Lakhani's opinion was inconsistent with Plaintiff's admitted daily activities, citing Plaintiff's self-reported ability to, *inter alia*, complete activities of daily living including self-care tasks, cooking, cleaning, driving, watching movies with his children, and going to the store. (Tr. 18); *see* Tr. 78-80 (Plaintiff's testimony that he grocery-shopped with his son and tried but struggled to help with chores around the house); Tr. 57 (Plaintiff's testimony that he drove 47 minutes to the hearing); Tr. 425-26 (Plaintiff's self-report to Dr. Lakhani that he drove himself to the examination and was able to eat, do dishes, cook, pick up a cup, button and zip, however, occasionally he could not shave or open a door, and could not go down stairs to do laundry); Tr. 600 (notation that Plaintiff could perform the equivalent of walking a block or two on level ground, and "moderate work around the house such as vacuuming, sweeping floors, or carrying in groceries."). Again, Dr. Lakhani opined Plaintiff "may not be a good candidate for any meaningful kind of work." (Tr. 427). The ALJ reasonably found Plaintiff's activities were inconsistent with such a blanket statement and such inconsistencies are a valid reason to discount an opinion. *See Irvin v. Comm'r of Soc. Sec.*, 573 F. App'x 498, 501 (6th Cir.

---

2. The undersigned thus rejects Plaintiff's argument that "[t]here is nothing to suggest that Dr. Lakhani's opinions are based on Mr. Cruz's subjective complaints." (Doc. 11, at 10).

2014) (ALJ may discount opinion in light of a claimant's "own reports of his daily activities that are [that are] inconsistent with . . . medical opinions").

Finally, the undersigned notes the ALJ did find Plaintiff significantly limited in the RFC, *see* Tr. 16, and that both State agency physicians had the results of Dr. Lakhani's opinion and examination to review when formulating their opinions. *See* Tr. 99, 113 (noting no weight given to Dr. Lakhani's opinion statement) and Tr. 101, 115 (summarizing Dr. Lakhani's physical examination findings). Both State agency physicians found Plaintiff could perform a limited range of work, and the ALJ – as he explained – assigned these opinions "great weight" and added further restrictions. (Tr. 18). Specifically, the ALJ added a sit/stand opinion, and a limitation to frequently handling and fingering on the left (as compared to the State agency physician opinion that Plaintiff was unlimited in this regard). *Compare* Tr. 16 *with* Tr. 100-01, 114. This further justifies the ALJ's decision to discount Dr. Lakhani's more extreme opinion and supports the ALJ's RFC. Dr. Lakhani's opinion was not entitled to any particular weight, *see Karger*, 414 F. App'x at 744, and the undersigned finds the ALJ's decision to discount that opinion is supported by substantial evidence as set forth above.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.

        s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).